IN THE
CIRCUIT COURT OF JEFFERSON COUNTY
STATE OF MISSOURI

**FILED**

NOV 25 2024

**MICHAEL E. REUTER**
**CIRCUIT CLERK**

Dawn Bougeno, individually and on behalf of )
all others similarly situated, )
)
    Plaintiffs. )
)
Vs. )
)  No. 24JE-CC01144
)
COMENITY BANK, a/k/a COMENITY CAPITAL )
BANK a/k/a Bread Financial, )
)  **JURY TRIAL DEMANDED**
Serve Registered Agent: )
CT Corporation )
120 S. Central Ave. )
Clayton, Mo. 63105; and )
)
Credit Control, LLC )
3300 Rider Trail S., Suite 500 )
Earth City, Mo. 63045, )
)
    Defendants. )

## COMPLAINT CLASS ACTION

Plaintiff, Dawn Bougeno, appearing both individually and on behalf of all others similarly situated and for his Class Action Complaint against Defendants, Comenity Bank a/k/a Comenity Capital Bank a/k/a Bread Financial Payments Inc. (hereinafter "Comenity") and Credit Control, LLC ("CCL"), states, alleges and avers the following:

### Preliminary Statement

1.  Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices,

1

Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' id. § 2(6), and sought to strike a balance between '[individuals' privacy rights, public safety interests, and commercial freedoms' id. § 2(9).

     2.     The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. See 47 C.F.R. § 64.1200(c)(2). Within the federal government s web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. See *Id*.; 16 C.F.R. § 310.4(b)(iii)(B) (It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person s telephone number is on the do-not-call registry, maintained by the Commission.) Private suits can seek either monetary or injunctive relief. *Id*.… This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace. *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019). Missouri has enacted similar laws to be construed in *pari materia*. See *Section 407.010* et seq.

**Nature of the Action**

3.     This is a class action under the Missouri No Call List prohibitions set forth in §§ 407.1073, §407.1076, §407.1098.1, §407.1104 et seq., and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A) a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telephone dialing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

4.     Defendant Comenity Bank a/k/a Comenity Capital Bank a/k/a Bread Financial Payments Inc., (collectively referred to hereinafter as "Comenity"), is a financial services company which call potential consumers via unsolicited automated texts without their express written consent and with whom they have no prior established business relationship, including calling numbers lawfully registered on the Missouri and National do not call registries.

5.     Defendant Credit Control, LLC ("CCL") is a Missouri based company which serves as a telemarketer and agent for Defendant Comenity Bank a/k/a Comenity Capital Bank a/k/a Bread Financial Payments, Inc and calls consumers via unsolicited automated texts on behalf of Comenity without their express written consent and with whom they have no prior established business relationship, including calling numbers lawfully registered on the Missouri and National do not call registries.

6.     Plaintiff Dawn Bougeno alleges that Comenity, et al., and CCL on behalf of Comenity sent more than thirty-one (31) unsolicited blast texts to her private residential telephone number that is listed on the Missouri and national do not calls registries by and through the use of robocalling, artificial intelligence automated systems, and technology to block or otherwise circumvent a consumer's use of a caller identification service, to harass, annoy and abuse subscribers to the called numbers to promote their services.

7.    In conducting this illegal texting campaign Defendant's Comenity and CCL violated the Missouri No Call List prohibitions set forth in §§ 407.1073, §407.1076, §407.1098.1, §407.1104 et seq., RSMo., and violated 47 U.S.C. § 227(b)(1)(A) of the Telephone Consumers Protection Act ("TCPA") when it called numbers on the Missouri and National Do Not Call Registries without their prior express written consent, including the Plaintiff.

8.    Defendants caused Plaintiff and Class Members to suffer concrete injuries because of placing unwanted robotic, Automatic Telephone Dialing Systems ("ATDS"), artificial intelligence generated and computer based automated telephonic calls/texts to their private residential telephones.

9.    Through this action, Plaintiff seeks damages, treble damages and injunctive relief to stop Defendant's Comenity and CCL's unlawful calls and texts. Plaintiff additionally seeks damages as authorized by the MDNC and TCPA on behalf of Plaintiff and the Class Members, and any other available legal or equitable remedies resulting from the actions of Defendant described herein.

10.    Because unsolicited calls/texts typically use technology capable of generating thousands of similar calls per day, the Plaintiff sues on behalf of a proposed nationwide class of other people who received similar calls/texts.

11.    A class action is the best means of obtaining redress for the Defendant's illegal practices and violations and is consistent both with the private right of action afforded by the TCPA, MDNC and the fairness and efficiency goals of Missouri Supreme Court Rule 52.08.

II.    Parties

12.    Plaintiff Dawn Bougeno (hereinafter "Plaintiff" or "Mrs. Bougeno") is an individual residing in this District and a resident of Jefferson County, Missouri.

4

13.    Defendant Comenity Bank, a/k/a Comenity Capital Bank are a financial services company and a subsidiary of Bread Financial ("Comenity"), a Delaware based corporation, a foreign corporation registered to conduct business in the State of Missouri and is a company that makes telemarketing calls or employs its agents, vendors or third party agents to make telemarketing calls within and into this District, to persons on the Federal and Missouri do not call registries, just as it did with the Plaintiff.

14.    Defendant Credit Control, LLC, is a Missouri Limited Liability Company registered with the Missouri Secretary of State and makes unsolicited blast texts on behalf of Defendant Comenity within and into this District, to persons on the Federal and Missouri do not call registries without their express written consent, just as it did with the Plaintiff.

**Jurisdiction and Venue**

15.    This Court has jurisdiction for violations of the Missouri do not call registries under Chapter 407.010 et seq. *RSMo*. and has personal jurisdiction over Defendant Comenity, et al., and CCL  because they in this District and have sufficient minimum contacts with the State of Missouri and this District in that they are a registered limited liability company, and a foreign corporation in Missouri, they each transact business in Missouri, profits personally from Defendant Comenity and CCL's harassing, abusive and annoying calls/texts and they send their products to Missouri and advertise in Missouri; the extraterritorial tortious acts complained of within this complaint occurred in Missouri and to a Missouri resident, thereby  subjecting them to direct jurisdiction and by virtue of Missouri's long arm statute, Section 506.500.1. See *Prosser v. USHealth Advisors, LLC*, 2023 WL 5093872 (E.D. Mo. August 9, 2023); *UMB Bank, N.A. v. Kraft CPAs, PLLC*, 2023 WL 3666879 (U.S. Dist. Ct, W.D. Mo. May 25, 2023); *Hand v. Beach KC, LCC*, 425 F.Supp.1096 (W.D. Mo. 2019).As stated in *Mims v. Arrow Financial Services,*

*LLC*, 132 S. Ct. 740 (2012), the Court has subject matter jurisdiction under 47 U.S.C. 227 et seq.,

of the Telephone Consumers Protection Act.

16.    Venue is proper in that the tortious acts complained of herein occurred in

Jefferson County, Missouri.

### MISSOURI DO NOT CALL REGISTRY VIOLATIONS

17.    In accord with Missouri telemarketing laws, § 407.1073 et seq., requires

telemarketers to:

"1. A telemarketer shall disclose, promptly and in a clear and conspicuous manner, to the
consumer receiving the telephone call the following:

(1) That the purpose of the telephone call is to make a sale;

(2) The telemarketer's identifiable name and the seller on whose behalf the solicitation is
being made;

(3) The nature of the merchandise or investment opportunity being sold;

(5) If the telephone call is made by any recorded, computer-generated, electronically
generated or other voice communication of any kind. When engaged in telemarketing, such
voice communication shall, promptly at the beginning of the telephone call, inform the
consumer that the call is being made by a recorded, computer-generated, electronically
generated or other type of voice communication, as the case may be."

18.    Mo. Rev. Stat. § 407.1076 provides in pertinent part:

It is an unlawful telemarketing act or practice for any seller or
telemarketer to engage in the following conduct:

(3)    Cause the telephone to ring or engage any consumer in telephone
conversation repeatedly or continuously in a manner a reasonable
consumer would deem to be annoying, abusive or harassing;

(4)    Knowingly and willfully initiate a telemarketing call to a consumer, or
transfer or make available to others for telemarketing purposes a
consumer's telephone number when that consumer has stated previously
that he or she does not wish to receive solicitation calls.

(10)  Knowingly provide assistance or support to any telemarketer when that person knows or consciously avoids knowing that the telemarketer is engaged in any act in violation of sections 407.1070 to 407.1085; or

(11)  Knowingly utilize any method to block or otherwise circumvent a consumer's use of a caller identification service.

19.  The Missouri Do Not Call Registry, Mo. Rev. Stat. § 407.1098.1 provides:

No person or entity shall make or cause to be made any telephone solicitation to the telephone line of any residential subscriber in this state who has given notice to the attorney general, in accordance with rules promulgated pursuant to section 407.1101 of the subscriber's objection to receiving telephone solicitations.

20.  Missouri Revised Statute 407.1104, imposes further restrictions:

1. Any person or entity who makes a telephone solicitation to any residential subscriber in this state shall, at the beginning of such solicitation, state clearly the identity of the person or entity initiating the solicitation.

2. No person or entity who makes a telephone solicitation to a residential subscriber in this state shall knowingly use any method to block or otherwise circumvent any subscriber's use of a caller identification service.

21.  A "residential subscriber" is defined as, "a person who has subscribed to residential telephone service from a local exchange company or the other persons living or residing with such person." Mo. Rev. Stat. § 407.1095(2).

22.  Defendant's calls to a telephone subscriber on the Missouri Do Not Call List is an unfair practice, because it violates public policy, and because it forced Plaintiff to incur time and expense without any consideration in return.

23.  Defendant's practice effectively forced Plaintiff to listen to Defendant's unlawful, harassing, abusive and annoying campaign.

24.  Defendant violated the unfairness predicate of the Act by engaging in an unscrupulous business practice and by violating Missouri statutory public policy, which public

7

policy violations in the aggregate caused substantial concrete injury to hundreds if not thousands of persons.

25.    Defendant's actions prevented the Plaintiff's telephone from being used for other legitimate family purposes during the time Defendant were illegally occupying the Plaintiff's telephone for Defendant's unlawful purpose.

26.    Chapter 407.1107(2) provides for up to $5,000 in damages for each knowingly violation.

**TCPA Background**

27.    In 1991 Congress enacted the TCPA to regulate explosive growth of the telemarketing industry. In so doing, Congress recognized that "[un]restricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. 102-243 § 2(5) (1991)(codified at 47 U.S.C. § 227(b)(1)(A)).

28.    The National Do Not Call Registry (the "Registry") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone calls at those numbers. *See* 47 U.S.C. 227 *et seq.*

29.    A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

30.    The TCPA and implementing regulations prohibit the initiation of telephone calls to residential telephone subscribers to the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227. Damages under this code are up to $1,500 per call or text.

8

## III.   Factual Allegations

31.   Defendant's Comenity and their agent CCL are financial organizations and their agents, employees and/or vendors, solicit consumers to purchase their services and or utilize their services for a fee.

32.   To generate leads, Defendant Comenity and CCL , and their agents, employees and/or vendors, and other unknown marketing firms and call centers, uses random, robocall, automated dialing system generated telemarketing calls/texts which are capable of storing and deploying randomly generated and sequential number generated calls to reach the maximum number of consumers who have never had a relationship with any of the Defendants, and who never consented to receive their calls.

33.   Defendant Comenity and their agent or vendor CCL also utilizes technology and computer systems to block or otherwise circumvent called numbers caller identification functions.

34.   Plaintiff is and was at all times mentioned herein, a "person" as defined by 47 U.S.C. §153(39).

35.   The Plaintiff is the sole subscriber who has complete dominion and control over and personally registered her private residential cellular telephone number (the "Number"), 314-691-XXXX on the National and Missouri State Do Not Call Registries approximately 10 years prior to receiving Defendants illegal texts, where they have remained continuously since.

36.   Plaintiff is also a qualified Missouri subscriber who has lodged his in objections to the Missouri Attorney General over receiving any unsolicited calls/texts, whatsoever, including each of the unsolicited texts by the Defendant as set forth in this Complaint.

37.     Despite this, Defendant Comenity provided Plaintiff's private residential phone number 314-691-xxxx to CCL , and their agents, employees and/or vendors, as approved, encouraged, enticed, and ratified by Defendant Comenity's policies, practices and procedures, wherein they placed more than thirty-one (31) automated blast texts promoting help, assistance and options with Plaintiff's "Comenity Bank account."

38.     Plaintiff has no prior business relationship with Defendant Comenity, nor has she ever had a Comenity bank account and did not give any Defendant named herein express written consent to contact her prior residential phone.

39.     During each mass blast text received by the Plaintiff the caller identification functioned blocked or circumvented by Defendant Comenity and CCL and/or its agents so the Plaintiff could not identify the caller and was deceived into believing that there was a problem with family or friends in Missouri and then was forced to review the unsolicited telemarketing texts.

40.     The entire series of texts received by Plaintiff from the collective Defendants are as follows:

    i.      08/12/2024    2:24 pm

    ii.     08/19/2024    11:43 am

    iii.    08/27/2024    11:53 am

    iv.     09/03/2024    12:58 pm

    v.      09/09/2024    1:47 pm

    vi.     09/16/2024    1:47 pm

    vii.    09/18/2024    1:22 pm

10

| viii.    | 09/20/2024 | 1:22 pm  |
| ix.      | 09/23/2024 | 1:22 pm  |
| x.       | 09/25/2024 | 1:29 pm  |
| xi.      | 09/27/2024 | 12:21 pm |
| xii.     | 09/30/2024 | 1:22 pm  |
| xiii.    | 10/02/2024 | 11:30 am |
| xiv.     | 10/04/2024 | 11:55 am |
| xv.      | 10/07/2024 | 11:50 am |
| xvi.     | 10/09/2024 | 2:31 pm  |
| xvii.    | 10/14/2024 | 1:11 pm  |
| xviii.   | 10/16/2024 | 2:11 pm  |
| xix.     | 10/18/2024 | 2:47 pm  |
| xx.      | 10/21/2024 | 2:30 pm  |
| xxi.     | 10/23/2024 | 10:11 am |
| xxii.    | 10/25/2024 | 12:33 pm |
| xxiii.   | 10/26/2024 | 1:26 pm  |
| xxiv.    | 10/28/2024 | 1:26 pm  |
| xxv.     | 10/30/2024 | 11:31 am |
| xxvi.    | 11/01/2024 | 1:22 pm  |
| xxvii.   | 11/04/2024 | 11:17 am |
| xxviii.  | 11/06/2024 | 11:48 am |
| xxix.    | 11/08/2024 | 11:18 am |
| xxx.     | 11/11/2024 | 12:05 pm |

xxxi.    11/13/2024    2:40 pm

41.    Each of the automated blast texts were generic and impersonal in form and function, and contained automated opting instructions and hyperlinks obviously sent by an ATDS and not manually entered by a human and when a call was placed to the number listed on the text relating to the origin of the calls on November 22, 2024, a third-party Comenity agent Chantel James a manager stated that the caller had reached the right company but the wrong department and provided the number 877-225-4202 to be dialed to reach the "right department."[1]

42.    During this series of thirty-one (31) calls/texts, the Defendant's and/or its third-party agent identified Defendant Comenity and solicited Mr. Bougeno to purchase services and seek assistance with her Comenity bank account or to know her options with "your Comenity Bank account", but refused to promptly disclose:

    a.    The telemarketers name and the phone number where the telemarketer could be reached;

    b.    The name of the telemarketing company they were employed by;

    c.    Whether the telephone text is made by any recorded, computer-generated, electronically generated or other voice communication of any kind.

    d.    Whether the call is being made by a recorded, computer-generated, electronically generated or other type of voice communication.

    e.    The correct name, address and phone number of the seller.

    f.    In numerous calls the telemarketer utilized fictitious company names or abbreviated names so the Plaintiff could not readily identify Defendant Comenity and CCL without extensive investigation.

43.    Defendant Comenity knew or reasonably should have known, or consciously avoided knowing that it's third party agents were deliberately failing disclose required information,

---

[1] Thereafter, on November 22, 2024 when 877-225-4202 was dialed at the insistence of the Comenity third-party agent to "reach the right department," an artificial intelligence interface was reached promoting a medical alert device.

misrepresenting its company name, using unregistered fictitious names and blocking or circumventing called numbers caller identification service providers and causing consumers phones to ring and or engaging consumers in telephone conversations and forcing them to read unsolicited texts repeatedly or continuously in a manner a reasonable consumer would deem to be annoying, abusive and/or harassing, which it did more than thirty-one (31) times with the Plaintiff between August 12, 2024, and November 22, 2024, yet Comenity continued to provide its vendors, agents and employees assistance and support.

44.    Defendant Comenity knew or reasonably should have known that when it provided the Plaintiff's private residential phone number to its third-party agents, that the telemarketers would repeatedly call 314-691-XXXX in an annoying, abusive or harassing manner.

45.    Defendant Comenity knew or reasonably should have known that its telemarketers would violate the privacy and rights to seclusion of the subscribers to the called numbers by calling the numbers which are registered on the Missouri and national Do Not Call registries without their express written consent.

46.    Mr. Bougeno did not have a prior business relationship with Defendant Comenity or any of its subsidiaries.

47.    Plaintiff never provided Defendant Comenity and CCL with prior written consent to call her private residential telephone number.

48.    Each of the thirty-one (31) illegal telemarketing calls were condoned, encouraged, enticed and ratified by Defendant Comenity.

49.    The Defendant persistently harassed, humiliated, annoyed, frustrated, and solicited Mr. Bougeno in each unsolicited telemarketing text listed supra, despite that Plaintiff is

registered on the Federal and Missouri Do Not Call registry and has been for many years prior to their unsolicited calls to his private, personal residential cell phone number.

50.     Defendant Comenity failed to scrub the called number 314-691-XXXX prior to providing Plaintiff's number to their agent and facilitated making the thirty-one (31) illegal, unsolicited texts.

51.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant by the above-described thirty-one (31)unsolicited telemarketing calls because their rights to privacy and seclusion have been violated, they were annoyed, harassed, humiliated, abused, and caused severe physical injuries, incurring telephone service provider fees, wear and tear on his phone, damage and disruption to his phone's battery life, and other injuries and costs.

52.     During all the illegal blast texts it was obvious that they were made by automatic yet random ATDS equipment, and random and sequential telephone number generating equipment capable of storing, producing, and dialing telephone numbers using a random or sequential number generator and continued to return calls to subscribers who opened the texts by the Defendant as each text was prefaced by automated clicks, several computer squeals, pauses, and dead air space before the telemarketer began speaking.

53.     None of the telephone calls/texts alleged in this complaint constituted calls/texts for emergency purposes.

### Class Action Allegations

54.     Class Definition: Plaintiff brings this Complaint against the Defendants, as authorized by Missouri Supreme Court Rule 52.08 on behalf of himself and the following three Classes:

14

**Missouri Do Not Call Class ("MDNC Class")**: All persons in the State of Missouri who (1) had his or her telephone number(s) registered with the Missouri Do-Not-Call registry for at least thirty days; (2) but who received more than one telephone call or text made by or on behalf of Defendant; (3) within a 12-month period; and (4) from four years prior to the filing of this Complaint.

**National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of Defendant (3) within a 12-month period, (4) from four years prior to the filing of the Complaint.

**Robocall Class and Automatic Telephone Dialing System Class:** All persons in the United States who (1) telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but received more than text from or on behalf of Defendant on their cellular phone service; (3) within a twelve month period; (4) through the use of an automatic telephone dialing system or artificial or pre-recorded voice system; (5) within four years prior to the filing of this Complaint.

55.    A substantial number of the events which give rise to the claim occurred in Jefferson County, Missouri. Therefore, under Local Rule, this civil action should be assigned to the Circuit Court of Jefferson County, Missouri.

56.    In the event the Defendant seeks to remove this case to federal Court, the appropriate venue lies in the St. Louis Division of the United States District Court for the Eastern District of Missouri under Missouri's Long Arm Statute.

57.    Excluded from the Classes are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded from the Classes are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to revise the Class definitions based on facts learned during discovery. Plaintiff is a member of each Class.

58.    Class Numerosity: The exact number of members of each Class is unknown and is

15

not available to Plaintiff currently, but such information is readily ascertainable by Defendant and their agents. The Classes are so numerous that joining all members is impractical. Plaintiff alleges that there are more than 40 members of each Class.

59.      The Class as defined above are identifiable through phone records and phone number databases and defendants' business records.

60.      The potential members of the Class number at least 161.   Individual joinder of these persons is impracticable.

62.      Plaintiff is a member of the Class.

63.      Class Commonality: Common questions of fact and law exist as to all members of the Classes and predominate over the questions affecting only individual members of the Classes. Identification of the individuals who qualify as a member of the Class will be sufficient to establish liability to the Class member. The predominant common questions include:

a.      Whether Defendant's used an "automatic telephone dialing system" as such terms are defined or understood under the MDNC, TCPA and applicable FCC regulations and orders;

b.      Whether Defendant had written prior express written consent to call Class members prior to texting the called numbers;

c.      Whether Defendants systematically made telephone calls to members of the DNC and MDNC Classes whose telephone numbers were registered with the Missouri and national Do-Not-Call registries;

d.      Whether Plaintiff and Class Members are entitled to damages, including whether Defendant's violations were performed willfully or knowingly such that Plaintiff and Class Members are entitled to treble damages; and

16

d.    Whether Plaintiff and Class Members are entitled to injunctive relief for violations of their privacy and attorney's fees and costs.

64.    The Plaintiffs' claims are typical of the claims of members of the Class. Plaintiff is not different in any relevant way from any other member of the Classes, and the relief he seeks is common to each Class.

65.    Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he has hired attorneys experienced in class actions, including TCPA class actions.

66.    Predominance and Superiority: The Classes alleged in this Complaint are appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual member of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. It would be virtually impossible for Class members to individually obtain effective relief from Defendant's misconduct. Even if Class members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

67.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient

17

adjudication of the controversy. The only individual question concerns the identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents, vendors, subsidiaries, and sub-contractors.

68.    Injunctive Relief is Appropriate: Based on information and belief, Defendant Comenity and CCL , and their agents, employees and/or vendors continue to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendant's conduct and to prevent irreparable harm to Plaintiff and Class members for which they have no adequate remedy at law.

69.    The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

### COUNT I
### Violations of the MDNC Against All Defendants
### by Plaintiff Individually and on Behalf of the MDNC Class

70.    Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 69 as though set forth herein.

71.    Plaintiff brings this claim individually and on behalf of the Missouri No Call List Members ("MDNC") against the Defendant.

72.    Defendants Comenity and CCL acts and omissions of making thirty-one (31) or more calls/texts to Plaintiff's private residential phone constitute multiple violations of the MDNC in that No person or entity shall make or cause any telephone to ring and make any telephone solicitation to the telephone line of any residential subscriber in this state who has given notice to the attorney general, in accordance with rules promulgated pursuant to section § 407.1073, § 407.1076, §407.1090, §407.1098.1 of the subscriber's objection to receiving telephone calls.

18

73. Defendant failed to secure prior express written consent from Plaintiff and the Class Members prior to making these and other calls/texts and had no prior business relationship with Plaintiff.

74. In violation of the MDNC, Defendant made and/or knowingly allowed automated telephonic calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent and after notice to the Missouri Attorney General was given that they did not want to receive said calls/texts.

75. Defendants made and/or knowingly allowed the blast texts to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers, and used a robotic interface with the Plaintiff, disabled the Caller I.D. function so Plaintiff could not identify the caller prior to answering the call/text to deceive Plaintiff to answer or open the unsolicited texts.

76. As a result of Defendant's conduct, Plaintiff and Class members were knowingly, willingly and deliberately harmed and are each entitled to a maximum of $5,000.00 in damages for each violation.

77. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

**WHEREFORE**, Plaintiff Bougeno and all members of the MDNC class prays for judgment against Defendant Comenity and CCL, for $5,000.00 per violation or $155,000.00 (for Bougeno's damages), and for additional damages for each class member predicated upon the calls received, and for their attorney's fees and costs, appropriate injunctive relief, and for such further relief deemed just and equitable in the premises.

**Count II**

19

<u>**Telephone Consumer Protection Act (Violations of 47 U.S.C. § 227(b)(1)(A)**</u>
<u>**(On behalf of Plaintiff and the Robocall and ATDS)**</u>

78.    Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 77 as if fully set forth herein.

79.    The foregoing acts and omissions of Defendant Comenity and CCL and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf through the use of an automated telephone dialing system constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A) et seq, by making any calls/texts, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

80.    The foregoing acts and omissions of Defendant Comenity and CCL and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the by making any calls or texts, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

81.    The Defendant's violations were negligent, willful, or knowing and the Plaintiff and Putative Class members suffered concrete injuries because of Defendants actions.

82.    As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of the TCPA, Plaintiff and members of the Class presumptively are entitled to an award of $1,500 in damages for every call made.

83.    Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes in the future.

**PRAYER FOR RELIEF**

20

**WHEREFORE**, Plaintiff individually and on behalf of all others similarly situated, seeks judgment against Defendant Comenity and CCL , as follows:

(a) For an order certifying the Classes and naming Plaintiff as the representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

(b) For an award of statutory damages for Plaintiff and each member of the Classes, beginning with Plaintiff Bougeno in an amount of $46,500.00; and for additional damages for each class member based on their individual receipt of these unsolicited telemarketing calls.

(c) For an order declaring that the Defendant's conduct violates the statutes referenced herein;

(d) For prejudgment interest on all amounts awarded;

(e) For injunctive relief as pleaded or as the Court may deem proper; and

(f) Such further and other relief as the Court deems necessary.

## COUNT III
### Violations of the TCPA Against the Defendant
### by Plaintiff Individually and on Behalf of the DNC Class

84.     Plaintiff hereby incorporates by reference as though set forth fully herein paragraphs 1 through 83. Plaintiff asserts this claim on behalf of herself and members of the Do Not Call Registry Class.

85.     47 U.S.C. §227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone calls to which they object.

21

86.     The foregoing acts and omissions of Defendant Comenity and CCL, and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf by calling the Plaintiff's residential cell phone which is listed on the national no call registry more than thirty-one (31) times within a twelve (12) month period in contravention of 47 U.S.C. 227(b)(1)(A), constitute numerous and deliberate violations of the TCPA, by making any calls, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

87.     Defendant Comenity and CCL's violations were negligent, willful, or knowing and the Plaintiff and Putative Class members suffered concrete injuries because of Defendants actions.

88.     As a result of Defendant Comenity, CCL and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of the TCPA, Plaintiff and members of the Class presumptively are entitled to an award of $1,500 in damages for each and every call/text made.

89.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant Comenity and CCL from making similar calls/texts to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff individually and on behalf of all others similarly situated, seeks judgment against Defendant Comenity and CCL as follows:

(a) For an order certifying the Classes and naming Plaintiff as the representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

(b) For an award of statutory damages for Plaintiff in an amount of $46,500.00, and additional damages for each member of the Classes for an additional $1,500.00 per call or text.

(c) For an order declaring that the Defendant's conduct violates the statutes referenced herein;

(d) For an order finding in favor of Plaintiff and the Classes on all Counts asserted herein;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) Such further and other relief as the Court deems necessary.

## COUNT IV
### Defendant's Vicarious Liability

90.    Plaintiff reasserts and incorporates fully herein by reference paragraphs 1 through 89 above paragraphs as though fully set forth herein.

91.    For 28 years now, the FCC has made clear that "the party on whose behalf a [call/text] is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the TeL Consumer Prot. Act of 1991,* 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

92.    Defendant Comenity "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC,* 28 F.C.C. Rcd. 6574 (2013). Both actual and apparent authority, and ratification, can be a basis for a finding of vicarious liability. *Mohon v. Agentra,* 400 F.Supp.3d 1189, 1226 (D. NM 2019).

93.    The FCC has instructed that defendants may not avoid liability by outsourcing

Telemarketing. May 2013 FCC Ruling, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

94.    The FCC has **rejected** a narrow view of TCPA liability, including the assertion that liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Mohon v. Agentra,* 400 F.Supp.3d 1189, 1226 (D. NM 2019).

95.    A connection exists between the Defendant Comenity herein and the calls complained of by Plaintiff because the calls were directly made on behalf of Defendant Comenity by their third-party agent so they could profit from a common enterprise in which they participated.

96.    Defendant Comenity is vicariously liable for their independent third-party marketing agents phone calls/texts at issue because Defendant Comenity substantially participated, promulgated the policy and ratified making the calls to Plaintiff and putative class members registered on the no call lists without their express written consent by providing the called numbers to their third party agent or vendor, without which those calls could not have been made.

97.    Defendant Comenity is further vicariously liable for the calls complained of by Plaintiff herein because they:

a)    authorized or caused employees, agents, vendors to initiate the phone calls/texts or initiated the calls/texts themselves;

b)    directly or indirectly controlled the persons who actually made or initiated the calls/texts;

c)    allowed the third-party agents access to information and operating systems within Defendant Comenity's control for the purpose of seeking to promote their services,

24

without which they would not be able to maintain and further robocalling atds, computer generated texting, and direct dialing.

d) allowed the third party agents to enter or provide consumer information into Defendant's sales or operational systems.

e) approved, wrote, reviewed, or participated in developing the scripts to promote or further their services.

f) Defendant Comenity knew, reasonably should have known or consciously avoided knowing that the actual third party agents were violating the law and Defendant Comenity failed to take effective steps within their power to require compliance;

g) Defendant Comenity gave substantial assistance or support to the telemarketers, employees, agents or vendors and each other while knowing, consciously avoiding knowing, or being recklessly indifferent to the fact that these were engaged in acts or practices that violated the TCPA and MDNC and ratified each of the illegal calls.

98. Defendant Comenitys' third-party agents had apparent authority to engage in the autodialing, direct dialing, robocalling and blast automated texting at issue herein because after Plaintiff patiently read the scripted pitch the Defendant's all profited from each and every sale they made thereby ratifying their illegal practice.

99. Defendant Comenity ratified the robocalls and automatic and computer-generated calls to Plaintiff described above because they accepted and intended the benefits to them of the calls while knowing or consciously avoiding knowing their third-party agents were calling and robocalling cell phones and phone numbers listed on the Federal and Missouri State Registry without complying with the Registry and without prior express written consent of the robocalled and called numbers.

100.   As a direct and proximate result of the thirty-one (31) illegal mass automated blast texts by the above Defendant, Plaintiff and Putative Class Members suffered the gross violation of their rights to privacy, solace and seclusion as set forth above, they were frustrated, harassed, annoyed, abused, as well as suffered monetary loss in phone provider service fees, wear and tear on his phone equipment, and the degradation of his battery life.

*WHEREFORE*, Plaintiff prays for entry of judgment against Defendant Comenity and CCL , and their independent contracting agents for their vicarious liability for an additional $201,500.00 and for his statutory, actual and/or treble damages sufficient in size to set a stern example and deter in the future like conduct complained of by Defendant or others. Plaintiff seeks additional damages on behalf of all Putative Class members for the reasons stated herein, and for such other and further relief as the court finds proper. Plaintiff requests an award of her attorney fees, costs and pre and post judgment interest.

Respectfully submitted,

/s/Dawn Bougeno
Dawn Bougeno
8598 Candela Ln.
Cedar Hill, MO 63016
dawnbougeno@myyahoo.com
(314) 691-XXXX

26

## NOTARY PUBLIC

A person personally known to me to be Dawn Bougeno, personally appeared before me on the date stated hereafter and after being duly sworn upon her oath, deposed and stated under the penalties of under perjury that the facts set forth in the above and foregoing Class Action Complaint are true and correct to the best of his knowledge and belief.

_Dawn Bougeno_

Dawn Bougeno

11-23-24

Date

_Melanie A Cobb_

Notary Public

MELANIE A. COBB
My Commission Expires
04-08-2028
NOTARY SEAL
Jefferson County
NOTARY PUBLIC - STATE OF MISSOURI
Commission # 19990892

27